## L. S. PARKS v. STATE.

No. A-3858. Opinion Filed Jan. 19, 1922.
(203 Pac. 481.)

(Syllabus.)

**Homicide—Shooting with Intent to Kill—Sufficiency of Evidence.**
In a prosecution for shooting another with intent to kill, evidence held sufficient to support the verdict and judgment of conviction.

Appeal from District Court, Pontotoc County; J. W. Bolen, Judge.

L. S. Parks was convicted of assault with intent to kill, and he appeals. Affirmed.

King & Crawford, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, L. S. Parks, was convicted on a charge of shooting one Jeff Neal, with intent to kill, and his punishment fixed at imprisonment in the penitentiary for the term of one year. He has appealed from the judgment rendered upon such conviction, but there has been no appearance on his behalf in this court.

The errors assigned question the sufficiency of evidence to sustain the verdict. It appears that Jeff Neal, complaining

witness, and the defendant, were living near Dolberg, and there was some disagreement over the rent of a pasture.

Jeff Neal testified:

"I went to the timber to get a load of wood. I was sitting on the load talking to John McCarroll when the defendant appeared and asked McCarroll if he had seen a certain cow; then he mentioned my name, and I said, 'Spence, I don't want you on my premises the way you have treated me;' and I started south going home, about two miles. As I was driving along the road I heard a gun fire. I looked around and there was Spence standing within five feet of me on the right side of my wagon; the first shot hit the brim of my hat and my mules started to run. I threw on the brake and he fired again, hitting me on the shoulder, neck and back of the head. I did not have a gun with me. 'Spence' is what they all call the defendant, L. S. Parks, down there; the shooting was in Pontotoc county."

W. H. Lamb testified:

"I was going from Roff. I noticed Jeff Neal in a wagon behind me. I did not know him then. I saw a man coming on a horse. The next thing I heard a gun fire. I looked and the defendant was standing on the ground with a gun, near Neal's wagon. The defendant fired a second shot and Neal hollered. The defendant got on his horse and turned and rode back. Neal asked me to get up on the wagon and see how bad he was shot. I looked at him and asked him where he lived. Then I went to Mr. Fairchilds' and phoned for his folks to come and get him."

John S. Treat testified:

"I was picking cotton and saw two wagons coming up the road. Then I noticed a man coming up behind in a gallop. I heard a gun fire and looked up and watched them, just a short time; the gun fired again, and Mr. Neal hollered 'Oh Lordy.' "

Dr. J. L. Jeffries testified:

"I am a practicing physician at Roff; was called to attend Jeff Neal. I found shot in his shoulder and in the back of his neck and head, and one or two went through his right ear."

As a witness in his own behalf, the defendant testified:

"I went over to the pasture that day to look for a cow, Some one hollered, 'Hey.' I looked and could not see any one, and some one hollered 'Hey,' again. I rode out from behind the bushes and saw Jeff Neal standing on his doubletree. I asked Mr. McCarroll, 'Have you seen anything of a "C" brand cow?' He said, 'No; I haven't;' and Jeff said, 'You God damn son of a bitch, get off my premises;' and I said, 'Jeff, don't cuss me.' He said, 'I killed your cow and am going to do you the same way. I made my getaway and started on back home. I stopped at Baker's and saw Jeff Neal pass in a wagon. I turned around and asked the little girl if Mr. Baker had a gun here. She said, 'Yes; in the house;' and I stepped to the door and got it, with six shells. I put them in the gun to protect my life on my way home. I was riding in a trot when I overtook Jeff, and when I got up nearly in front of his mules he made a quick dash like going for a gun, and I jumped off my horse and raised my gun and fired. I missed him. He was still going down after the gun, and I gave him another load as quick as I could. Then I went and gave myself up to the officers."

While the defendant is not represented in this court, we have carefully gone through the record and find it free from substantial error, and we see no reason to doubt that this conviction was justified by the evidence.

The judgment of the lower court is therefore affirmed.

MATSON and BESSEY, JJ., concur.